UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STANLEY JOSEPH, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:10CV1521 JAR |
| KENNETH L. ALLEN, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant's [sic] Motion for Summary Judgment (ECF No. 45) and Defendant Latavia Jones's Motion for Summary Judgment (ECF No.75). Defendants Officer Kenneth L. Allen ("Allen") and Lieutenant Edward J. Harper ("Harper") move for summary judgment on Joseph's claims pursuant to 42 U.S.C. §1983 based upon the doctrine of qualified immunity. They also seek summary judgment on Joseph's state law claims, asserting, among other things, the doctrine of official immunity. In turn, defendant Jones moves for summary judgment on Joseph's malicious prosecution claim based upon his alleged failure to state a claim for malicious prosecution. These matters are fully briefed and ready for disposition.

## BACKGROUND

On February 3, 2008, plaintiff Stanley Joseph ("Joseph") and defendant Latavia Jones ("Jones") were involved in a verbal and physical altercation at Joseph's residence in the Gentry's Landing apartment complex in downtown St. Louis. (Defendants' Statement of Uncontroverted Material Facts ("DSUMF"), ECF No. 47, ¶¶3, 4-5). At 4:55 p.m., Joseph called 9-1-1 and told the dispatcher, "A lady is going crazy in my house." (Plaintiff's Additional Statement of Uncontroverted Material Facts ("PSUMF"), ECF No. 64, pp. 8-15, ¶¶3, 4; DSUMF, ¶6). Around

5:00 p.m., Allen arrived at Joseph's apartment. (PSUMF, ¶8; DSUMF, ¶7). Sometime thereafter, Allen's supervisor, Harper, came to assist in Joseph's arrest. (DSUMF, ¶¶1, 7).

When Allen arrived on the scene, Joseph was standing in the hallway, in front of his apartment.[1] (PSUMF, ¶9). Allen heard loud arguing. (DSUMF, ¶8; PSUMF, ¶¶14-15). Allen observed Jones in a ripped t-shirt; she was yelling and upset. (DSUMF, ¶10). During his investigation of the scene, Jones told Allen that Joseph cut her on her arm during the altercation in the bedroom. (DSUMF, ¶12; PSUMF, ¶60; ECF No. 64-3, pp. 68-69).[2] Allen saw a knife (DSUMF, ¶9), which Jones identified as the knife that cut her. (ECF No. 64-3, p. 69). Allen seized the knife. (Id.; PSUMF, ¶52). Allen saw the cut on Jones's arm. (DSUMF, ¶13; ECF No. 64-3, pp. 77, 106). Allen also saw a scratch on Jones's neck and abrasions on her fingers. (DSUMF, ¶11; ECF No. 64-3, pp. 107-08).[3]

A neighbor, Jon Jordan, lived across the hall from Joseph's apartment. (PSUMF, ¶18). Shortly before 5:00 p.m., Jordan heard yelling from inside Joseph's apartment. (PSUMF, ¶¶19, 23). Jordan went into the hallway, but Joseph's door was closed. (PSUMF, ¶21). Jordan heard banging and a woman yelling coming from inside Joseph's apartment. (PSUMF, ¶22). Jordan returned to his apartment and continued to look through the peephole. (PSUMF, ¶¶28-29). Jordan observed the door to Joseph's apartment open, and he saw Joseph and Jones for about ten (10) minutes. (PSUMF, ¶¶30, 32). Jordan claimed that he saw Jones throw a pot of water, but never saw Joseph

---

[1] The parties dispute whether Joseph was holding a knife. Joseph claims he was not (PSUMF, ¶12); Allen claims that Joseph was (PSUMF, ¶61; ECF No. 64-3, pp. 53-55). While this is an issue of fact, the Court finds that it is not material for purposes of summary judgment.

[2] At her deposition, Jones testified that she believes that Joseph cut her because she does not know how else she received that cut on her left arm. (ECF No. 64-1, pp. 88-89).

[3] Allen did not observe that Joseph was injured in any way. (ECF No. 64-3, p. 112). Joseph testified that he had a few scratches. (ECF No. 64-2, p. 58).

with a knife. (PSUMF, ¶¶35, 39). Jordan stated that he continued to hear Jones yelling when he was inside his apartment. (PSUMF, ¶41).

Allen arrested Joseph at the scene. (DSUMF, ¶14).[4] Neither Allen nor Harper obtained Joseph's side of the story.[5] (PSUMF, ¶59). Initially, Joseph was charged with assault, first degree. (PSUMF, ¶55). The charge was later amended to domestic assault, second. (ECF No. 64-3, p. 116).

Allen prepared a police report regarding the incident and Joseph's arrest. (PSUMF, ¶¶60-66). In the police report, Allen stated that Joseph cut Jones with a knife; that he observed a knife in Joseph's left hand; and that he seized a knife. (PSUMF, ¶¶60-62). Allen did not provide Joseph's version of the events or identify Jordan as a witness in the police report. (PSUMF, ¶¶64, 65; ECF No. 64-3, p. 105).[6] Harper approved the police report drafted by Allen. (PSUMF, ¶68).

Joseph was tried on the charge of domestic assault, second. Jones testified on behalf of the prosecution at trial. (ECF No. 77, ¶81). Joseph was acquitted. (First Amended Complaint for Damages (hereinafter "Complaint" or "Compl.", ECF No. 20, ¶¶15, 40, 49).

On August 17, 2010, Joseph filed this lawsuit and, on April 25, 2011, he filed a First Amended Complaint for Damages. Therein, Joseph alleges claims under 42 U.S.C. §1983 ("§1983")

---

[4]Allen contends that he arrested Joseph at Harper's direction. (ECF No. 64-3, p. 87). Harper claims that Joseph already was under arrest when he arrived on the scene. (ECF No. 64-10, pp. 31-33). Again, this issue of fact is not material for purposes of summary judgment.

[5]Allen maintains that Joseph refused to speak to him or provide any statements regarding the incident with Jones. (ECF No. 64-3, pp. 81-82, 90). Joseph claims that Allen did not attempt to obtain his side of the story, and told him to "shut up." (PSUMF, ¶46). Again, this is an issue of fact, but it is not material to this Court's analysis.

[6]Allen claims that he spoke with Jordan, who said that he heard Jones and Allen arguing but did not see anything. (ECF No. 64-3, p. 101-03). Jordan testified that he told the officer that he had seen Joseph and Jones "interact" from the peephole of his apartment. (ECF No. 64-4, p. 25). Jordan stated that the officer responded, "That will be all." (Id.). Joseph contends that Allen never obtained a statement from Jordan. (PSUMF, ¶48).

for Deprivation of Civil Rights against Allen and Harper (Counts I and V),[7] for False Arrest against Allen and Harper (Counts II and VI), and for Malicious Prosecution against Allen, Jones and Harper (Counts III, IV and VII).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine

---

[7]Joseph's §1983 claim is based upon an alleged deprivation of his Fourth and Fourteenth Amendment rights under the Constitution. (Compl., ¶¶11, 45).

whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

## DISCUSSION

**I.     DEFENDANTS ALLEN AND HARPER'S MOTION FOR SUMMARY JUDGMENT**

**A.     Section 1983 Claims Against Allen and Harper**

Joseph alleges claims against Allen and Harper under §1983 "to remedy deprivation of rights secured by the Fourth and Fourteenth Amendments fo the United States Constitution." (Compl., ¶¶11, 45). Joseph alleges that he was arrested and charged with assault, even though the officers had no probable cause for such charge. (Id., ¶¶12-13, 46-47). In addition, Joseph claims that baseless criminal charges were instigated against him based upon the foregoing, which ultimately resulted in his acquittal. (Id., ¶¶15, 49). The Court construes Joseph's allegations as a §1983 action for false arrest.[8]

### 1.     Qualified Immunity Standard

Qualified immunity shields public officials "from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable

---

[8] In his briefing, Joseph argues that the Court also should construe his allegations as asserting a §1983 claim for malicious prosecution. (Plaintiff's Response to Defendants' Motion for Summary Judgment ("Response"), ECF No. 64, pp. 23-25). The Eighth Circuit, however, has refused to recognize such a cause of action. See Response, p. 24 (admitting that the Eighth Circuit in Kurtz v. City of Shrewsbury, 245 F.3d 753, 758 (8th Cir. 2001) rejected the notion that the constitution provides a substantive right for a person to be free from criminal prosecution except upon probable cause). This Court finds no basis to disturb the Eighth Circuit's finding and, therefore, will not address Joseph's purported §1983 claim for malicious prosecution. See also (I')sla Ballard v. City of St. Louis, No. 4:11CV1553, 2011 U.S. Dist. LEXIS 107994, at *7 (E.D. Mo. Sept. 22, 2011); Miller v. Albright, No. 4:07-CV-1086, 2009 U.S. Dist. LEXIS 112838, at *18-19 (E.D. Mo. Dec. 3, 2009)(granting summary judgment on malicious prosecution claims brought pursuant to §1983 based upon Kurtz).

person would have known." Brown v. City of Golden Valley, 574 F.3d 491, 495 (8th Cir. 2009)(citing Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)); Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); Stepnes v. Ritschel, 663 F.3d 952, 960 (8th Cir. 2011)). To overcome a defendant's qualified immunity claim, the plaintiff must show that: "'(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional . . . right; and (2) the right was clearly established at the time of the deprivation.'" Baribeau v. City of Minneapolis, 596 F.3d 465, 474 (8th Cir. 2010)(quoting Howard v. Kansas City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009)); Stepnes, 663 F.3d at 960. "The law is clearly established if it gives the defendant officials 'fair warning' that their conduct violated an individual's rights when the officials acted." Forrester v. Bass, 397 F.3d 1047, 1054 (8th Cir. 2005) (citing Hope, 536 U.S. at 739-40 (2002)); see also Anderson v. Creighton, 483 U.S. 635, 640 (1987) (A right is "clearly established" if "a reasonable official would understand that what he is doing violates that right."). If a state official violates a clearly established constitutional right, he is not entitled to qualified immunity. Harlow, 457 U.S. at 818-19.

Qualified immunity allows "officers to make reasonable errors," Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996), and provides "ample room for mistaken judgments." Malley v. Briggs, 475 U.S. 335, 343, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986). "The defense protects public officials unless they are 'plainly incompetent' or 'knowingly violate the law.'" Borgman v. Kedley, 646 F.3d 518, 522 (8th Cir. 2011)(quoting Hunter v. Bryant, 502 U.S. 224, 229, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991)) (citation omitted).

      2.     Joseph's §1983 Claim For False Arrest is Barred by Qualified Immunity

"'It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments.'" Marksmeier v. Davie, 622 F.3d 896, 900 (8th Cir. 2010)(quoting Hannah v. City of Overland, Mo., 795 F.2d 1385,

1389 (8th Cir. 1986)). An officer, however, is entitled to qualified immunity for a warrantless arrest if there was at least "arguable probable cause." Borgman, 646 F.3d at 522-23 (citing Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005)); Fisher v. Wal-Mart Stores, Inc., 619 F.3d 811, 816 (8th Cir. 2010)(citing Amrine v. Brooks, 522 F.3d 823, 832 (8th Cir. 2008))(a warrantless arrest is consistent with the constitution if it is supported by probable cause). "An officer has probable cause to make a warrantless arrest when the totality of the circumstances at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" Borgman, 646 F.3d at 523 (quoting Fisher, 619 F.3d at 816 ). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is 'objectively reasonable.'" Borgman, 646 F.3d at 523 (quoting Amrine, 522 F.3d at 832). Whether the police had probable cause at the time of an arrest is a question of law for a court to decide. Fisher, 619 F.3d at 816; Peterson v. City of Plymouth, 60 F.3d 469, 475 (8th Cir. 1995).

Because Joseph was arrested for assault, the relevant inquiry is whether Allen and/or Harper had "probable cause, or at least arguable probable cause, to believe that" Joseph had assaulted Jones on February 3, 2008. Stepnes, 663 F.3d at 960. Under Missouri law, the criminal offense of first degree assault exists if a person "attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." Mo.Rev.Stat. §565.050 (2012). In turn, a person acts "knowingly" when "he is aware of his conduct or that those circumstances exist" or when "he is aware that his conduct is practically certain to cause that result." Mo.Rev.Stat. §565.016.3 (2012). "Serious physical injury" is defined as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body[.]" Mo.Rev.Stat. §556.061(28)(2012).

The record here indicates that Allen and/or Harper had at least arguable probable cause to arrest Joseph for assault. Allen arrived on the scene and found Jones visibly upset, with her clothing torn. Jones told Allen that Joseph had attacked and cut her in the bedroom of Joseph's apartment. Allen relied on Jones's statements to determine that he had probable cause to arrest Joseph. (ECF No. 64-3, pp. 77-78). In addition, Allen saw a laceration on Jones that corroborated her claim and found a knife at the scene, in addition to abrasions on her hands. Thus, Allen and/or Harper had probable cause to arrest Joseph based upon Jones's accusation, her verified injury and other physical evidence. See Borgman, 646 F.3d at 523 (quoting Fisher, 619 F.3d at 817)("Officers may 'rely on the veracity of information supplied by the victim of a crime. . . .'"); see also Granito v. Tiska et al., 120 F. App'x 847, 849 (2d Cir. 2005)).

Joseph claims that the police officers did not have probable cause to arrest him because he and a potential witness, Jordan, were not interviewed.[9] Jordan, however, admittedly witnessed only events that occurred in the hallway and that were within sight of his apartment's peephole. Jordan's account does not exonerate Joseph or negate a finding of probable cause. According to Joseph, Jordan

> heard Jones angrily yell for at least five minutes before the door to Joseph's apartment was opened. Jordan testified that he sensed anger and that Jones never sounded frightened or scared. After the door opened, Jordan watched the apartment for at least 10 minutes before Allen arrived. Throughout the period, Joseph remained within Jordan's sight, looking exasperated and frustrated and Jordan heard Joseph continuously plead to Jones to stop tearing up the apartment and just leave. In the meantime, Jones continued to angrily yell at Joseph and Jordan heard the sound of banging coming from the apartment.

---

[9]Joseph makes much of the fact that Allen was disciplined for failing to identify Jordan as a witness in the police report. (PSUMF, ¶67). The fact that Allen may not have followed police procedures by failing to interview and/or identify Jordan is not the proper inquiry to determine whether Allen had probable cause to arrest Joseph.

Response, p. 22. Even if this Court adopted Joseph's version of Jordan's account in its entirety, it still would be insufficient to demonstrate lack of probable cause. Jordan's testimony is not incongruous with a finding that Joseph assaulted Jones in the bedroom; Jordan did not witness the entire dispute between Joseph and Jones, particularly none of the altercation in the bedroom. Allen could have determined that Joseph cut Jones during the altercation in the bedroom, as stated by Jones, and also believed Jordan's testimony. Allen's alleged failure to speak to Jordan and omission of Jordan's information in the police report is not sufficient to prove that Allen lacked probable cause to arrest Joseph or to deprive Allen of qualified immunity. See Stepnes, 663 F.3d at 961 (citing Amrine v. Brooks, 522 F.3d 823, 832 (8th Cir. 2008))(Police officers are not required to conduct a "mini-trial" before arrest, although probable cause "does not exist when a minimal further investigation would have exonerated the suspect.").

Joseph cites Kuehl v. Burtis, 173 F.3d 646 (8th Cir. 1999) to support his claim that the officers lacked probable cause to arrest him based upon their failure to interview Jordan. There, the Eighth Circuit found that there was no arguable probable cause because the officer had spoken with the suspect for only twenty seconds, ignored exculpatory evidence, disregarded an eyewitness account, and did not mention the witness's account in his police report. Id. at 650-51. Accordingly, the Eighth Circuit found that an arresting officer was not entitled to qualified immunity.

The Court finds that Kuehl is not on point for several reasons. First, the Court cannot identify any "plainly exculpatory evidence" as was present in Kuehl. Id., at 651. At most, Joseph can identify conflicting evidence. Allen relied upon the testimony of Jones, which is sufficient for finding probable cause. (ECF No. 64-3, pp. 77-78); see Baptiste v. J. C. Penney Co., 147 F.3d 1252, 1259 (10th Cir. 1998) (officers may weigh the credibility of witnesses in making a probable cause determination); Jamison v. Dep't of Soc. Servs., Div. of Family Servs., 218 S.W.3d 399, 411 (Mo. 2007)("A probable cause standard does not require a fact finder to balance conflicting evidence.").

Allen merely evaluated the conflicting versions of the events in making his probable cause determination. In addition, in Kuehl, the arresting officer refused to interview a witness to the "entire altercation." Kuehl, 173 F.3d at 651. As discussed, Jordan was not a witness to all of the events that occurred on February 3, 2008. Jordan did not witness Jones and Joseph in their bedroom and, therefore, his testimony does not preclude the assault. As this is not a case where "minimal further investigation" would have exonerated the subject, Bigford v. Taylor, 834 F.2d 1213, 1219 (5th Cir. 1988); Kuehl, 173 F.3d at 650, the Court finds that Allen and Harper had probable cause to arrest Joseph. Given the totality of the circumstances, even if Allen had been aware of Jordan's witness account and included that information in his report, Allen still would have had probable cause to arrest Joseph.

Accordingly, because Joseph fails to demonstrate that any of Allen's and/or Harper's actions violated a constitutional right, they are entitled to qualified immunity, and thus summary judgment in favor of Allen and Harper is appropriate on Joseph's §1983 claim. Stepnes, 663 F.3d at 963 (citing Lykken v. Brady, 622 F.3d 925, 929-30 (8th Cir. 2010)).

### B. State Law Claims of False Arrest and Malicious Prosecution against Allen and Harper

1. State Law Claims in this case fail Because Allen and Harper had probable cause. Joseph alleges that Allen and Harper committed the torts of false arrest and malicious prosecution because they arrested and prosecuted him for assaulting Jones without probable cause. False arrest only has two elements: restraint of the plaintiff against his will, and the unlawfulness of that restraint. Blue v. Harrah's North Kansas City, LLC, 170 S.W.3d 466, 475 (Mo. Ct. App. 2005)(citing Bramon v. U–Haul, Inc., 945 S.W.2d 676, 680 (Mo.Ct. App. 1997)); Kurtz, 245 F.3d at 757 ("A false arrest occurs when there is a confinement without legal justification."); Day v. Wells Fargo Guard Service Co., 711 S.W.2d 503, 504 (Mo. 1986)). An officer is empowered to

make an arrest if he or she has reasonable grounds, or "probable cause," to believe that the person is guilty of the offense. Kurtz, 245 F.3d at 757 (citing Rustici v. Weidemeyer, 673 S.W.2d 762, 769 (Mo. 1984)).  A police officer who has probable cause to believe that a suspect has committed a crime is not liable for the state law tort of false arrest simply because the suspect is later proven innocent or the charges are dismissed. Kurtz, 245 F.3d at 757 (citing Hannah, 795 F.2d at 1389); Pierson v. Ray, 386 U.S. 547, 555, 18 L. Ed. 2d 288, 87 S. Ct. 1213 (1967)).  Similarly, a person suing on a theory of malicious prosecution must plead and prove the following elements: (1) the commencement of a prosecution against the plaintiff; (2) the instigation by the defendant; (3) the termination of the proceeding in favor of the plaintiff; (4) the want of probable cause for the prosecution; (5) the defendant's conduct was actuated by malice; and (6) the plaintiff was damaged. Sanders v. Daniel International Corp., 682 S.W.2d 803, 807 (Mo. 1984)(citing S. Greenleaf, II Greenleaf on Evidence §§ 449-59 (2nd ed. 1844)). Thus, the existence of probable cause negates actions for both false arrest and malicious prosecution in Missouri.  Kurtz, 245 F.3d at 757.

As discussed previously, Allen and Harper had ample evidence to support a finding of probable cause to arrest Joseph.  Jones stated that Joseph had attacked her with a knife; Jones had a cut on her arm consistent with her claim; and police found a knife that Jones identified as Joseph's weapon.  Based upon the foregoing, the Court concludes that the Missouri law claims for false arrest and malicious prosecution fail because Allen and Harper had probable cause to arrest and prosecute Joseph for assault.  See Kurtz, 245 F.3d at 757; Edwards v. McNeill, 894 S.W.2d 678, 683 (Mo. Ct. App. 1995)(reasonable belief that individual committed offense complete defense to false arrest claim); Baker v. St. Joe Minerals Corp., 744 S.W.2d 887, 889 (Mo. Ct. App. 1988) (absence of probable cause for prosecution is essential element of malicious prosecution claim).

        2.       State Law Claims Also Fail Because Allen and Harper Have Official Immunity

As an additional basis for granting summary judgment, Allen and Harper argue that they are entitled to summary judgment on Joseph's state law claims for false arrest and malicious prosecution under the doctrine of official immunity. "Under Missouri law, the doctrine of official immunity protects public officials from civil liability for injuries arising out of their discretionary acts or omissions performed in the exercise of their official duties." McLean v. Gordon, 548 F.3d 613, 617 (8th Cir. 2008). Discretionary acts require "the exercise of reason in the adaption of means to an end and discretion in determining how or whether an act should be done or pursued." Rustici v. Weidemeyer, 673 S.W.2d 762, 769 (Mo. 1984)(quoting Jackson v. Wilson, 581 S.W.3d 39, 43 (Mo. Ct. App. 1979)). Conversely, a ministerial act is one "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." Id. The analysis of the act in question "must be determined by the facts of each particular case after weighing such factors as the nature of the official's duties, the extent to which the acts involve policymaking or the exercise of professional expertise and judgment, and the likely consequences of withholding immunity." Kanagawa v. State, 685 S.W.2d 831, 836 (Mo. 1985). "[P]olice officers exercising judgment or discretion are entitled to official immunity unless they commit a 'willful or malicious wrong.'" Baribeau, 596 F.3d at 482 (quoting State ex rel. Beaulieu v. City of Mounds View, 518 N.W.2d 567, 569 (Minn. 1994)). The "willful and malicious wrong" standard contemplates "whether the official has intentionally committed an act that he or she had reason to believe is prohibited." Beaulieu, 518 N.W.2d at 571. "This is a subjective standard, in contrast to the objective qualified immunity standard." Nelson v. County of Wright, 162 F.3d 986, 991 (8th Cir. 1998) (citing Elwood v. County of Rice, 423 N.W.2d 671, 676-79 (Minn. 1988)).

Defendants Allen and Harper argue that they are entitled to official immunity for Joseph's state law claims. They assert that their actions were "discretionary and required the exercise of professional judgment that would be protected by the doctrine of official immunity." (ECF No. 46, p. 14).

In response, Joseph, without citation, asserts that "Missouri law is clear that an official charged with making a false arrest is not entitled to official immunity." (Response, p. 26). Joseph argues that arrests are "a ministerial act for the basis of applying official immunity." (Id., p. 27). Likewise, Joseph argues that Allen and Harper are not entitled to official immunity because they acted "in bad faith or with reckless indifference to the rights of Joseph through their failure to account for and record the observations and statement of Jordan in the police report, ignorance of physical evidence at the scene and Joseph's report of the incident and Allen's mischaracterization to Harper of Joseph's action at the scene following his arrival." (Id., p. 27). Finally, Joseph claims, again without citation, that Allen and Harper are not entitled to official immunity protection because they are accused of intentional torts, not mere negligent acts. (Id., pp. 26, 28).

Joseph's reasons for this Court to deny defendants official immunity are not supported in law or in the record. First, the investigation of a crime and arrest of a subject are discretionary acts, not ministerial ones. Reasonover v. St. Louis County, 447 F.3d 569, 585 (8th Cir. 2006); Blue, 170 S.W.3d at 479 ("Deciding whether or not to arrest someone is a matter of discretion - the officer must decide what course should be pursued based on the circumstances at hand."); see also Highfill v. Hale, 186 S.W.3d 277, 280 (Mo. 2006)(noting that the officer has discretion to determine whether to make an arrest). With respect to the second point and putting aside Joseph's numerous unsupported contentions, the Court finds no specific evidence of bad faith on the part of either Allen or Harper. Reasonover, 447 F.3d at 585; see also Wertish v. Krueger, 433 F.3d 1062, 1067 (8th Cir. 2006)(granting summary judgment based upon official immunity where the plaintiff "presented no

evidence of subjective malice, such as ill will toward [plaintiff] or an intent to act unlawfully"). Finally, the Court does not find the negligence/intentional tort dichotomy proffered by Joseph to be either persuasive or supported by Missouri law. Missouri law clearly applies official immunity to cases involving intentional tort. See Richardson v. Sherwood, 337 S.W.3d 58, 63 (Mo. Ct. App. 2011)(noting cases applying official immunity applies to intentional tort claims of false imprisonment, assault and malicious prosecution). Allen and Harper are entitled to official immunity with respect to Joseph's false arrest and malicious prosecution claims.

In summary, the Court grants Allen and Harper's motion for summary judgment on Joseph's state law claims. Joseph's claims for false arrest and malicious prosecution fail either because Allen and Harper had probable cause to arrest Joseph for assault or because they are protected by official immunity.[10]

## II.     JONES'S MOTION FOR SUMMARY JUDGMENT

Having granted Defendants' Motion for Summary Judgment, the Court lacks federal subject matter jurisdiction over Joseph's malicious prosecution claim against Jones. The Court denies Jones's motion for summary judgment as moot.

## III.    CONCLUSION

For the foregoing reasons, the Court will grant Allen and Harper's Motion for Summary Judgment and will deny, without prejudice, Jones's motion for summary judgment. The Court also dismisses Joseph's malicious prosecution claim against Jones and Jones's Counterclaim for Tort Damages Against Plaintiff Stanley Joseph (ECF No. 15), without prejudice, for lack of federal subject matter jurisdiction.

---

[10]Having determined that Allen and Harper are entitled to summary judgment based upon the absence of probable cause and their entitlement to official immunity, the Court need not address Defendants' public duty defense.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Kenneth L. Allen's Motion for Summary Judgment (ECF No. 45) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Latavia Jones's Motion for Summary Judgment (ECF No.75) is **DENIED**, without prejudice.

**IT IS FURTHER ORDERED** that Joseph's claim for malicious prosecution against Latavia Jones and Defendant Latavia Jones's Counterclaim for Tort Damages Against Plaintiff Stanley Joseph (ECF No. 15) are **DISMISSED** for lack of jurisdiction.

An appropriate Judgment will accompany this Memorandum and Order.

Dated this 15th day of May, 2012.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE